UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

DURELLA WARD )
)
V. ) NO. 2:10-CV-78
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for Supplemental Security Income and Disability Insurance Benefits were denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 10 and 17].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 39 years old at the time of her alleged disability onset date of December 22, 2006. Her past relevant work required medium exertion. She has a high school education.

Plaintiff's medical record is set forth in her brief as follows:

> Plaintiff was admitted to Woodridge Hospital from October 8, 2002 through October 14, 2002, after she presented with depressive symptoms that had worsened to the point of suicidal ideation. Plaintiff reported feeling depressed and gave a history of hypomanic symptoms, such as decreased sleep, increased talkativeness, periods of irritability with psychomotor activity, and spending sprees when she buys things she doesn't really need. Plaintiff also reported flashbacks of her ex-husband's physical abuse of her and stated that she has to keep her guard up all the time. The initial impression was bipolar type II, currently depressed, with an admitting global assessment of functioning [hereinafter "GAF"] of 35. The final diagnosis upon discharge was major depression, recurrent, severe, with a GAF of 60 (Tr. 225-231).
> Dr. Thomas Brock, Jr. examined Plaintiff on February 3, 2004, due to a painful, uncomfortable cystic lesion of her left wrist, consistent with ganglion cyst. Plaintiff was advised to see an orthopedic surgery for surgical removal (Tr. 232).
> Plaintiff received treatment at Holston Counseling off and on from October 16, 2002 through March 26, 2004 (Tr. 233-249). On October 8, 2002, Plaintiff presented with complaints of severe depression, anxiety, and suicidal thoughts (Tr. 249). On October 16, 2002, Plaintiff was diagnosed with major depression, recurrent, severe, with a current GAF of 45, a highest last six months GAF of 55, and a lowest last six months GAF of 35 (Tr. 347-348). On October 21, 2002, Plaintiff presented for an aftercare appointment following discharge from Woodridge, where she had been emergently committed for severe depression with suicidal ideation and helplessness or hopelessness. Plaintiff was noted to have daily crying spells, very poor family support, poor concentration, difficulty with decision making, slight decrease in her appetite, low self esteem, and avoidance type behavior. Plaintiff's diagnosis remained the same, with a GAF of 60, and she was given a two-week work release (Tr. 244-246). By November 8, 2002, Plaintiff complained of slight hand tremor and shakiness; she had attempted to return to work and was there about two hours when she just broke down crying and shaking all over; she was sleeping approximately 5.5 hours with medication and occasionally napping during the day; her mood was depressed; her affect was tearful; and

2

her eye contact was fair. Plaintiff was given a letter requesting that she be allowed time off from work until the end of December and was also given a letter requesting that she be considered for part-time employment over the next several months (Tr. 242-243). By January 14, 2003, Plaintiff's diagnosis remained the same, with a GAF of 45 (Tr. 239). Plaintiff underwent crisis evaluation on March 25, 2004, after she presented to Indian Path Hospital with severe depression with active suicidal ideation. Plaintiff was noted to have a history of self injurious or suicidal behavior; to have a history of throwing things when anger; and to demonstrate an inability to adequately care for her physical needs representing potential for imminent serious harm to herself. It was determined Plaintiff needed medication management that could only be accomplished safely in a hospital setting with 24 hour psychiatric and nursing care. The diagnosis was depressive disorder, with a GAF of 28 (Tr. 234-238).

Plaintiff was admitted to Indian Path Pavilion from March 25, 2004 through March 29, 2004. Presenting problems included marital difficulties, inability to concentrate, shakiness, short-term memory problems, not eating or sleeping, 40 pounds weight loss in three months, decrease in ADLs, and thoughts to drive her car off a bridge or cut her wrist. Plaintiff had symptoms of anhedonia, feeling sad, hopelessness, excessive guilt, helplessness, feeling ashamed of needing psychiatric help, decreased sleep, nightmares, and decreased energy level. Plaintiff had not brushed her teeth in three days, she felt like her family was talking about her, her mood was depressed, her affect was labile, and she was tearful at times. The final diagnoses upon discharge were major depressive disorder, recurrent, severe, and generalized anxiety disorder, with a GAF of 35 (Tr. 250-260).

Plaintiff received treatment at Watauga Orthopaedics from March 18, 2004 through August 13, 2004, due to left wrist pain, left wrist cyst with numbness and tingling, left carpal tunnel syndrome, and right knee pain secondary to medial meniscal tear (Tr. 261-271). On April 27, 2004, Plaintiff underwent left volar radial wrist ganglionectomy and left carpal tunnel injection (Tr. 266-267). On July 8, 2004, Plaintiff underwent right knee scope and medial meniscectomy (Tr. 264).

Plaintiff received physical therapy at Wellmont Holston Valley Outpatient Center from July 13, 2004 through July 22, 2004, due to status post medial meniscectomy with continued pain in the right lower extremity. Problems identified include pain in the right lower extremity, decreased active range of motion in the right PF joint, decreased manual muscle testing of the right lower extremity, decreased independence with ADLs/ANLs, and decreased independence with ambulation (Tr. 272-281).

Plaintiff received treatment at Virginia Center for Integrative Medicine from June 15, 2003 through June 28, 2005. Conditions and complaints addressed during treatment include GERD, uterine enlargement, breast mass, right knee torn meniscus, depression, tearfulness, headache, bilateral knee pain, anxiety, and sinusitis (Tr. 282-333). On June 11, 2004, right knee MRI revealed horizontal tear of the posterior body of the medial meniscus (Tr. 323). On October 7, 2004, MRI of the left knee showed minimal joint effusion (Tr. 322). On January 13, 2005, MRI of the right knee showed post operative changes in the posterior horn of the medial meniscus and small effusion (Tr. 318-319). On March 10, 2005, Nurse Practitioner Davis reported that Plaintiff suffered an injury to her right knee and which required surgery last June; the knee has continued to bother her and recently the pain increased suddenly; MRI of the knee shows new changes in the

knee which will require a second surgery to correct; until then the knee will cause her significant pain; and standing and weight bearing on the knee could worsen the damage (Tr. 285).

On May 10, 2005, Plaintiff underwent limited consultative exam by Dr. Karl W. Konrad. Dr. Konrad only noted that Plaintiff's height was 64 inches; her weight was 173 ½ pounds; her blood pressure was 127/94; she had full range of motion of both knees; and she walked unassisted with a modest limp on the right leg (Tr. 334-335).

On May 12, 2005, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; is limited to frequent push/pulling (including operation of foot controls) with the right lower extremity; and can frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 336-343).

On May 26, 2005, Plaintiff underwent consultative psychological evaluation by Dr. Charlton Stanley and Art Stair, M.A., LPE. Presenting complaints included driving difficulties secondary to paranoia and nervousness, constant depression, anxiety which feels like her heart is coming out of her chest, and history of psychiatric hospitalizations secondary to suicidal ideation. Plaintiff reported that she has to force herself to get cleaned up; that she shakes all the time and gets very nervous when she has to see people, but also gets like that at home when no one is around; that she can't get happy about anything; that she has to sleep with the bathroom light on because she is afraid; that she has difficulty forgetting about past abusive relationships; that she feels worthless and doesn't feel like doing much of anything; and that she withdraws from others and mostly stays at home alone. In summary, the examiners noted that Plaintiff reports a mild degree of generalized anxiety characterized by worry, tension, and occasional sleep disturbance; she has mild occasional agoraphobic features and experiences occasional panic features; and she reports a moderate degree of lasting depression characterized by feelings of hopelessness, irritability, fatigue, concentration difficulties, anhedonia, sleep disturbance, and appetite disturbance. The diagnoses were major depressive disorder, recurrent, without significant inter-episode, moderate, and generalized anxiety disorder, mild, with a GAF of 50. The examiners opined Plaintiff appears to be capable of understanding simple information or directions with the ability to put it to full use in a vocational setting; her ability to comprehend and implement multi-step complex instructions is adequate; her ability to maintain persistence and concentration on tasks for a full workday and workweek is moderately impaired; and her social relationships are at least moderately impaired (Tr. 344-350).

On June 13, 2005, a reviewing state agency psychologist opined Plaintiff is markedly limited in her ability to understand, remember, and carry out detailed instructions and to interact appropriately with the general public. Dr. Bryant opined Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to

changes in the work setting; and to set realistic goals or make plans independently of others (Tr. 351-368).

Plaintiff received treatment at Indian Path Medical Center on four occasions from January 25, 2006 through July 18, 2007, due to pelvic pain, acute sinusitis, cough, myalgia, acute contusions flowing a fall, and left hip pain radiating into the left leg (Tr. 373-392). On January 25, 2006, pelvic ultrasound showed a small amount of fluid adjacent to the right ovary (Tr. 392). On July 14, 2007, lumbar spine x-rays showed grade I spondylolisthesis of L5 anterior to S1, with a question of osteolysis. The impression was grade I L5 on Si spondylolisthesis and possible spondylolysis (Tr. 387).

Plaintiff received Emergency Room treatment at Holston Valley Medical Center on July 24, 2007, due to left hip and leg pain (Tr. 393-394).

Plaintiff returned to Holston Counseling on August 19, 2005. Presenting problems included problems coping with daily living, depression or mood disorder, anxiety, jitteriness, avoidance behavior, somatization, worrying, distractibility, indecisiveness, poor attention or concentration, decreased appetite, apathy, depressed mood, helplessness, hopelessness, irritability, loss of interest or pleasure, low self-esteem, and sleep disturbance. The diagnoses were depressive disorder and rule out major depression, with a current GAF of 60 (Tr. 412-418). Plaintiff resumed treatment at Holston Counseling from January 13, 2006 through August 1, 2007, during which time she was diagnosed with depressive disorder NOS and rule out bipolar disorder. Problems noted during treatment include crying spells, excessive worry, feeling down much of the time, amotivation, apathy, irritability, mood swings, racing thoughts, nervousness, history of childhood molestation, history of spousal abuse, anxiety, sleep disturbance, and decreased concentration and memory (Tr. 396-411).

On August 28, 2007, a reviewing state agency physician opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pave without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting (Tr. 419-436).

Plaintiff underwent consultative exam by Dr. Krish Purswani on September 5, 2007. Dr. Purswani reports being asked to check gait and station and range of motion of the LS spine and the worst knee, which happens to be the right knee. Plaintiff reported right knee pain since 2004, with a history of surgical repair in 2002 and continued knee pain with popping, and low back pain since 2005. Exam was remarkable for obesity; slow and cautious gait; tenderness along the entire lumbar spine into the sacral spine; positive straight leg raise test bilaterally; decreased back range of motion; slight effusion on the right knee; and right knee tenderness inferomedial to the patella. The diagnoses were chronic low back pain, spondylolisthesis, and chronic right knee pain status post medial meniscus tear (Tr. 437-439).

On November 7, 2007, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of at least two hours in an eight-hour workday; and can sit for a total of about six hours in an eight-hour workday, but must periodically alternate sitting and standing to relieve pain or discomfort (Tr. 444-451). On February 25, 2008, a second reviewing

5

state agency physician affirmed this assessment as written (Tr. 467).

Plaintiff continued treatment at Holston Counseling from August 28, 2007 through February 8, 2008, during which time she was suffering crying spells, insomnia, decreased appetite, depression, decreased concentration and memory, and increased stress (Tr. 456-466).

On March 20, 2008, a reviewing state agency physician opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting (Tr. 468-485).

Plaintiff was emergently admitted to Indian Path Pavilion from May 20, 2008 through May 23, 2008, secondary to severe emotional depression with suicidal ideation and a plan to overdose. Plaintiff was noted to be overwhelmed with a depressed mood and irritability. Plaintiff reported episodes where her mood would be a little bit more elevated than usual, she has more energy than usual, her mind would race, her sleep would be very poor; at times being very irritable and having difficulty controlling her temper; and other times having problems with depression, low energy, and more sleep than usual. Plaintiff was noted to feel anxious and scared when around a lot of people; to have problems feeling as if something bad might happen to her; to have panic attacks when around a lot of people; and to have flashbacks about previous abuse. Upon admission, Plaintiff was disheveled; she was tearful and dysphoric; her mood was depressed; and her affect was congruent. The final diagnoses were bipolar disorder type 2 and posttraumatic stress disorder, with an admission GAF of 25 and a discharge GAF of 65 (Tr. 486-494).

Plaintiff continued treatment at Holston Counseling from April 3, 2008 through August 19, 2008. During this time, Plaintiff continued to suffer depression, excessive worry, frequent crying, decreased memory and concentration, suicidal ideation, increased stress, sleep disturbance, and decreased appetite (Tr. 495-502).

Plaintiff received treatment and testing at Holston Valley Medical Center on seven occasions from August 31, 2007 through September 6, 2008, due to left hip pain, left shoulder pain, dental pain, and low back pain radiating into the left leg (Tr. 503-515). On August 31, 2007, pelvic MRI showed probable contusion in the soft tissues on the left lateral pelvis subcutaneous tissues (Tr. 514-515). On October 10, 2007, MRI of the left shoulder showed minimal AC joint degenerative change, mild amount of supraspinatus tendinopathy, and mild subacromial/subdeltoid bursitis (Tr. 512-513).

Plaintiff returned to Holston Counseling October 14, 2008, at which time she was tearful and reporting decreased sleep, decreased appetite, and crying on a daily basis. Plaintiff's mood was depressed, with congruent affect; her concentration and memory were reported as decreased; she complained of hearing voices on occasion; and her insight was minimal (Tr. 516-518).

On December 10, 2008, Plaintiff underwent consultative exam by Elizabeth A. Jones, M.A. Plaintiff's affect was moderately blunted; her eye contact was moderate; and she became tearful on several occasions. Plaintiff reported that she has panic attacks; that she freaks out when she goes places; that she stays nervous; that her medicine makes her

6

really sleepy; that she was diagnosed with bipolar disorder and PTSD while in the hospital; that she hears voices; that she can't enjoy anything because of the voices in her head; that she is forgetful; and that she is unable to travel unaccompanied because of panic attacks. The diagnoses were depressive disorder NOS, malingering, and personality disorder NOS with histrionic and borderline features. Ms. Jones opined Plaintiff is moderately limited in her ability to interact appropriately with the public and supervisors and mildly limited in her ability to understand, remember, and carry out complex instructions; to make judgments on complex work-related decisions; and to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 519-528).

Plaintiff continued treatment at Holsoton Counseling from November 11, 2008 through January 6, 2009, due to depression, anxiety, daily crying spells, decreased memory and concentration, auditory hallucinations, and sleep disturbance (Tr. 533-537).

[Doc. 11, pgs. 2-11].

At the last administrative hearing, held on February 5, 2009, the ALJ called Dr. Robert Spangler, a Vocational Expert ["VE"]. He asked Dr. Spangler to assume that the plaintiff was 41 years old, had her past relevant work experience requiring medium exertion, and had a high school education. He then asked that Dr. Spangler "assume the claimant's restricted to light work, which is work that requires lifting over 20 pounds occasionally and 10 pounds frequently. If you further assume the claimant would need a job that would allow a sit / stand option. She could do only simple, unskilled jobs that would not require frequent interaction with the general public." When asked if there would be jobs for the plaintiff if she had those restrictions, he opined that, without the sit / stand restriction and prohibition against frequent interaction with the general public, there would be 5,620,000 in the nation and 119,000 in the region which the plaintiff. The assumed restriction would reduce these numbers by 80%. The 20% that would be left include "thins like food prep,

production machine tender and some dishwashers, some light janitorial,... non-farm animal care."[1] The ALJ also asked that if the plaintiff's GAF (Global Assessment of Functioning) was 50 and if she had a greater than moderate impairment in her ability to concentrate and persist at work tasks, could she still do those jobs or any others. Dr. Spangler opined that there would be no jobs if that were the case.

In his hearing decision, the ALJ found that the plaintiff had severe impairments of being status post arthroscopic surgery on the right knee, low back and left hip pain, a depressive disorder, a personality disorder with histrionic and borderline features, and malingering. He found that she retained the residual functional capacity to perform light work with a sit/stand option, and being limited to performing simple, unskilled work that does not involve frequent interactions with the general public (Tr. 12).

The ALJ noted the plaintiff's hospitalizations for her mental problems. He gave great weight to the opinions of Ms. Jones and the State Agency psychologists. He found, based on those opinions, that the plaintiff had a mild restriction of daily living activities, no more than moderate difficulty with maintaining social functioning, and no more than moderate difficulty with maintaining concentration, persistence and pace. He found that the evidence more reliably indicated a depressive disorder as opposed to a bipolar disorder (Tr. 16). He found that with these limitations, plaintiff could not perform her past relevant work (Tr. 17). Based upon

---

[1] An 80% reduction would leave 1,124,000 jobs in the nation and 23,800 jobs in the region.

the testimony of the vocational expert, he found that there were a substantial number of jobs which the plaintiff could perform (Tr. 18). Accordingly, he found that the plaintiff was not disabled (Tr. 19).

Plaintiff did not dispute the physical aspect of the ALJ's residual functional capacity finding, and any argument based upon that is hereafter waived. She did allege that the ALJ erred regarding his findings regarding her mental impairments. Plaintiff asserts that these impairments are of far greater severity than that found by the ALJ. Plaintiff also states that the ALJ erred because this same ALJ, in a final decision dated December 21, 2006 on previous applications found that plaintiff "is precluded from working with the general public and is limited to simple, low-level tasks involving infrequent changes in work duties." (Tr. 66).

The Court sees no error in the ALJ's determination of the severity of the plaintiff's mental impairments. The ALJ conducted two hearings in this case. Following the first, on October 23, 2008, the ALJ sent the plaintiff for another consultative mental examination by Ms. Jones, and held an additional hearing thereafter. The opinions of Ms. Jones, and those of the State Agency psychologists who studied the plaintiff's treatment records available at the time of their review, state that the plaintiff had no more than a moderate limitation of function in any area. "Moderate," as defined on the mental assessment forms, means "there is more than a slight limitation in this area but the individual is still able to *function satisfactorily*."

(Tr. 526), emphasis added.[2] There is no opinion from any treating source evaluating the degree of limitation imposed by plaintiff's mental conditions, much less contradicting the opinions of Ms. Jones and the State Agency consultants. The ALJ wisely did not attempt to rely solely upon the non-examining State Agency psychologists, but ordered the examination by Ms. Jones to get as fresh a source of information as possible before making his final determination. He certainly did not err in according her opinion great weight.

Much is made of the fact that there are slight differences between the RFC findings in the 2006 and 2009 hearing decisions, both written by the same ALJ. *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 840 96th Cir. 1997) stated that "absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." The Court is familiar with this rule, and has enforced it even in cases where plaintiffs did not raise it. However, the findings of Ms. Jones and the opinions of the State Agency consultants both support the finding that plaintiff "is capable of performing simple unskilled type work that does not involve frequent interactions with the general public." (Tr. 12). These reports also contain "new and material evidence" as required by Acquiescence Ruling 98-4(6), showing that the plaintiff is no longer totally precluded from working to even the slightest degree with the general public and to doing jobs with no more than "infrequent changes to work duties," as set out in the prior hearing decision (Tr.

---

[2] "Satisfactorily" equates to functionality, even though not easy or pleasant. More is required to be adjudicated disabled.

66). These differences come very close to bordering on insignificance in any case, but nonetheless, the current RFC finding is well supported in the record.

There was substantial evidence to support the ALJ's findings of residual functional capacity and the question to the VE. There was thus substantial evidence to support his finding that the plaintiff was not disabled. He did not err in making his slight modification of the RFC from the earlier decision. Accordingly, it is respectfully recommended that the plaintiff's Motion for Summary Judgment be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 17] be GRANTED.[3]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).